**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

QUADIR SNELL,

                    Petitioner,

                    v.

UNITED STATES OF AMERICA,

                    Respondent.
_____

)
)
)
)
)
)
)
)
)
)
)

Hon. Garrett E. Brown, Jr.

Civil Action No. 10-2072 (GEB)

**MEMORANDUM OPINION**

**BROWN**, Chief Judge:

This matter comes before the Court upon the Petition of *pro se* Petitioner Quadir Snell to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, this Court will deny the Petition in part, and the Court will order the parties to file supplemental materials regarding Petitioner's claim predicated on counsel's failure to file a timely appeal of his sentence.

### *Background*

Petitioner, along with seven co-conspirators, was charged on July 11, 2008, in a ten-count Superceding Indictment with: one count of conspiracy to commit robbery affecting interstate commerce, one count of robbery affecting interstate commerce, and one count of receipt of stolen property. Petitioner pled guilty to the substantive Hobbs Act robbery count, Count VIII, on September 29, 2008, and this Court sentenced him to 96 months imprisonment on January 5, 2009. The Court's sentence was at the bottom of the Guidelines range for an offense level of 24 and criminal history category of V. As part of his plea agreement, Petitioner expressly waived the right to appeal or collaterally attack his sentence if it fell within or below Guidelines offense

level 24.

Petitioner filed the instant Petition on April 23, 2010, and after advising Petitioner of his rights under *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999) and receiving Petitioner's consent to hear the Petition as filed (*see* Docs. No. 3, 4), the Court on July 20, 2010 ordered the Government to respond to the allegations in the Petition.  The Government timely responded on July 29, 2010, and, after ordering that the Government's Answer be re-served upon Petitioner at his new place of incarceration, the Court permitted Petitioner to file any reply to the Government's Answer no later than November 29, 2010.  (*See* Doc. No. 8.[1])  Petitioner did not file any responsive documents to the Government's Answer.

Petitioner presents four grounds for vacating his sentence, all alleging ineffective assistance of counsel.  First, Petitioner alleges that defense counsel Edward F. Borden "failed to properly investigate the law by immediately advising [him] that . . . . '[i]t would a [sic] huge mistake not to accept the pleas agreement,' without first investigating the circumstances of the offense."  Petitioner claims that, "From the on-set [sic], I proclaim my innocence of this offense as it was written."  (Petition ¶ 12, Ground 1.)  Second, Petitioner claims that Mr. Borden failed to advise him of the maximum and minimum sentences for the charged offense "during the development of the plea in the case," and that defense counsel told him that he would not be sentenced to more than five years in prison.  (*Id.*, Ground 2.)  Next, Petitioner claims that Mr.

_____

[1]The Court notes that an inadvertent delay in the filing of the Court's Letter Order of October 22, 2010, prevented the Government from having the opportunity to re-serve Petitioner by the October 27 deadline stated in the Letter Order.  The Government filed a certificate of service dated October 28, 2010—the day that the October 22 Letter Order posted on the Court's electronic filing system certifying its compliance with the substance of the Letter Order.  The Court is satisfied that the Government has complied with the Court's service order, and the Court also notes that Petitioner has had ample opportunity to respond to the Government's Answer, but declined to do so.

Borden failed to object to Rule 11 violations.  Specifically, Petitioner claims that his counsel failed to inform the Court of Petitioner's learning disabilities; failed to inform the Court of inaccuracies in the factual basis for the guilty plea; that "he improperly informed the court that he had discuss [sic] the plea agreement and explain [sic] the plea colloquy proceedings with me"; and that he "improperly advises [sic] me during the plea colloquy to . . . 'just agree to everything.'" (*Id.* Ground 3.)  Finally, Petitioner alleges that he told his defense counsel that his sentence was unreasonable and asked him to appeal that sentence, but his counsel "improperly informed [him] that [he] could not appeal [the] sentence," and did not appeal the sentence. Petitioner also claims that his counsel told him that his guidelines range was 51–63 months, as opposed to the 96-month sentence issued by the Court.  Petitioner did not appeal his sentence. (*Id.* Ground 4.)  In support of these allegations, Petitioner filed an unsworn affidavit that generally asserts the following facts: (1) that he has a learning disability and "therefore [has] had to rely on the services of 'jailhouse lawyers' to assist [him] in preparing and submitting [his] litigation"; (2) that his attorney "pressure [sic][him] into pleading guilty to criminal conduct [he] was innocent of . . . "; (3) that his attorney advised him that he did not have the time to develop a defense and that the Court would not permit him to subpoena defense witnesses; (4) that his attorney improperly advised him that the plea deal was "fair and just"; and (5) that he would not have pleaded guilty but for the improper advice of his counsel.  (*See id.* Snell Aff.)

### *Analysis*

## I.      **Standard of Review**

### A.      Section 2255

28 U.S.C. § 2255 permits a court to vacate, correct, or set aside a sentence that was "imposed in violation of the Constitution or laws of the United States, or that the Court was

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Section 2255 also may not be used "to re-litigate questions which were raised and considered on direct appeal.'" *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986)). However, the Court of Appeals has expressed a strong preference that an ineffective assistance of counsel claim be brought before the district court in the first instance in a motion under 28 U.S.C. § 2255. *See DeRewal*, 10 F.3d at 103 (citing *United States v. Rieger*, 942 F.2d 230, 235 (3d Cir. 1991)). Since it is appropriate to raise a claim of ineffective assistance of counsel under § 2255, rather than on direct appeal, "the failure to raise such a claim on direct appeal should not be treated as a procedural fault." *Id.*

A district court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005) (quoting *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In determining whether or not to conduct an evidentiary hearing, the Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record," *Forte*, 865 F.2d at 62, and "abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief," *Booth*, 432 F.3d at 546 (citing *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005)). However, "[v]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

4

The Court is mindful of Petitioner's *pro se* status. Because Petitioner is a *pro se* litigant, the Court must apply a more liberal standard of review to his claims than it would to a petition filed with the aid of counsel.  *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Wade v. Yeager*, 377 F.2d 841, 846 (3d Cir. 1967) (recognizing that a petition made without the benefit of counsel must be read with a measure of tolerance).

B.      Plea Agreement Appellate / Collateral Attack Waiver

Petitioner's plea agreement contained an express provision stating that he "knows that he has and . . . voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 24."  (Gov't Answer Ex. 7 (Plea Agreement) at 3–4 & sched. A ¶ 13.)  Petitioner does not contest that he received a sentence within the applicable Guidelines range for an offense level of 24, *see* U.S.S.G. Sentencing Table (2008 ed.) (providing a guidelines range of 92–115 months for an offense level of 24 and a criminal history category V), and the Court is satisfied from its review of the plea agreement that no exception to this waiver applies to Petitioner's claims.

The Third Circuit has made clear that, while appellate and collateral attack waivers do not strip this Court of jurisdiction to consider an appeal or collateral attack, such waivers will be enforced, and courts should not review the merits of such an appeal or collateral attack, if the criminal defendant knowingly and voluntarily waived his rights of appeal and/or collateral attack, unless enforcement of the waiver would work a miscarriage of justice.  *E.g.*, *United States v. Shedrick*, 493 F.3d 292, 297 (3d Cir. 2007); *United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007).  In determining whether enforcement of the waiver would result in a miscarriage of

justice, the Third Circuit has instructed courts to consider the following factors:

> [T]he clarity of the error, its gravity, its character (*e.g.*, whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)).  For instance, the Court of Appeals has recognized that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [Petitioner] from understanding his plea or from filing a direct appeal as permitted by his plea agreement would result in a miscarriage of justice." *Shedrick*, 493 F.3d at 298.  However, the Third Circuit has explained that procedural errors in computing a defendant's sentence do not constitute a miscarriage of justice, because such claims improperly "focus[ed] on the result of the proceeding, rather than the right relinquished" by the defendant.  *United States v. Corso*, 549 F.3d 921, 931 (3d Cir. 2008) (quoting *United States v. Smith*, 500 F.3d 1206, 1213 (10th Cir.2007); *United States v. Hahn*, 359 F.3d 1315, 1326 n. 12 (10th Cir.2004)).

The record in this case satisfies the Court that Petitioner knowingly and voluntarily entered into the plea agreement and waived his rights of appeal and collateral attack, and the Court is persuaded that enforcement of the plea agreement against the first three grounds of the Petition would not result in a miscarriage of justice.  During the plea hearing, the Court conducted a Rule 11 colloquy with Petitioner, wherein the Court specifically inquired about, *inter alia*: Petitioner's understanding of the plea agreement, including the sentencing factors and maximum sentence he could receive; whether he was satisfied with the legal services of his attorney; whether any person had asked him to lie during the plea hearing; whether he suffered from any mental illness; and whether the Government's allegations concerning his criminal

conduct were accurate.  Petitioner's sworn responses to these questions flatly contradict the allegations of ineffective assistance of counsel and innocence he now presents to the Court.

Specifically, the Court inquired regarding Petitioner's competency, truthfulness, and his satisfaction with the advice of counsel as follows:

Q:      You're represented by Mr. Borden, is that correct?

A:      Yes, Your Honor.

Q:      He's just given me an application for permission to enter a plea of guilty. When I look at that document, at the seventh page, after Paragraph 44 it says, I hereby certify that the foregoing information and statements herein are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.  Signed by me in the open court in the presence of my lawyer, this 27th day of September 2008.  Did you sign that statement?

A:      Yes, Your Honor.

Q:      Is it true?

A:      Yes, Your Honor.

Q:      Did anybody tell you to lie to me today?

A:      No, Your Honor.

Q:      Okay. So, I can rely on this as being truthful?

A:      Yes, Your Honor.

Q:      Okay. You're represented by Mr. Borden. You tell me you're satisfied, you've had enough time to discuss this matter with him and you're satisfied with his legal advice, is that correct?

A:      Yes, I am, Your Honor.

Q:      English is your native language, you went through ninth grade, taken no drugs or medication in the past 72 hours, never been a patient in a mental hospital institution, and do not believe at the present time you're mentally ill or incompetent, in any respect, is that correct?

A:      Yes, Your Honor.

7

> THE COURT:          Mr. Borden, are you satisfied that Mr. Snell is competent?
>
> MR. BORDEN:         I am, Your Honor.

(Plea Tr. at 2:9–3:14.)  Based on these answers, the Court found Petitioner competent to enter a guilty plea, and the Court advised Petitioner of the consequences of such a decision.

> Q:      . . . Now, you would like to withdraw your previous plea of not guilty and enter a plea of guilty, is that right?
>
> A:      Yes, Your Honor.
>
> Q:      And, you tell me at Page 2 of your application that you've told you[r] lawyer all the facts and circumstances known to you about these charges. You're satisfied he understands the information you provided, he's counseled and advised you on the nature of each charge and all possible defenses you might have in this case. He explained to you if you persist in your plea of not guilty, under the constitution and laws of the United States, you'd be entitled to a speedy public trial by a jury of 12 persons on these charges. You understand that?
>
> A:      Yes, Your Honor.
>
> Q:      If you went to trial, the jury would be told by the Court you're presumed innocent. The government would have to prove your guilt beyond a reasonable doubt.  You would not have to prove your innocence and you could not be convicted unless all 12 jurors voted unanimously for conviction.  And, if you went to trial, the government would have to produce in open court the witnesses against you. Your lawyer could confront and cross examine them, could object to any evidence offered by the government.  You'd have the right to produce witnesses and offer evidence in your defense. And, you'd have the right to testify or not testify as you saw fit.  But, if you chose not to testify, the jury could draw no suggestion or inference of guilt from that fact.  Do you understand you'd have those rights if you went to trial?
>
> A:      Yes, Your Honor.
>
> Q:      On the other hand, if I accept your plea of guilty, there won't be a trial.  You'll be a convicted felon by your own statement and nothing will remain except for me to impose [a] sentence upon you, do you understand that?
>
> A:      Yes, Your Honor.
>
> Q:      And, you tell me you understand you could receive up to 20 years in prison and a fine of up to $250,000 or both.  You understand that?

A:   Yes, Your Honor.

Q:   All right.  You tell me you're pleading guilty because you're, in fact, guilty and for no other reason and no one has any threats or promises to cause you to plead guilty. Is that true?

A:   Yes, Your Honor.

Q:   And, you tell me also, that you understand that the sentence to be imposed upon you is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, and in deciding what sentence to impose upon you, the judge is required to consider the maximum and minimum terms of prison, fines, terms of supervised release recommended under the guidelines, and any departures authorized therefrom.  But, the guidelines are advisory.

The judge will also consider the other statutory [f]actors identified in 18 U.S. Code 3553(a) in deciding what sentence to impose, but as I told you, after considering those points, which are advisory, the judge has the authority to impose a sentence more severe, up to that statutory maximum we just discussed, or less severe than the sentencing range recommended by the guidelines.  Understand that?

A:   Yes, Your Honor.

(*Id.* at 3:15–5:22.)  Upon the Court's request, the Government summarized the relevant plea agreement terms—specifically, (1) that the Government would dismiss two counts of the Superseding Indictment as against Petitioner and a separate federal indictment for distribution of crack cocaine in exchange for Petitioner's plea, and (2) that "The parties agree that the total guidelines offense level is 24.  The defendant waives all appeal rights if his sentence falls within a range of 24 or less and the government, in turn, waives appeal rights if the sentence falls within the range of 24 or more."  (*Id.* at 7:6–8:5.)  The Court asked both defense counsel and defendant if those were the terms of the agreement, and both answered in the affirmative.  (*Id.* at 8:7–11.)

Subsequently, the Court permitted the Government to *voir dire* Petitioner to establish the factual predicate for the crime he allegedly committed.

9

[EXAMINATION BY MR. McBRIDE]

Q:     On or before March 22nd, 2004, did you, William Valentin, Valentin Cedeno, Jonathan Alvarado and Tanya Rivera, drive from New Jersey to the Mall of Georgia?

A:     Yes.

Q:     Did you, Valentin, Alvarado and Cedeno, run into Mayor's Jewelers in that mall?

A:     Yes.

Q:     Did you or members of your group, smash display cases with sledge hammers?

A:     Yes.

Q:     Did you or members of your group steal Rolex watches and flee the store?

A:     Yes.

Q:     Did you do all these things knowingly, voluntarily and willfully?

A:     Yes.

MR. McBRIDE:     Your Honor, the government is satisfied with Mr. Snell's factual allocution. We also represent that were Mr. Snell to proceed to trial, we could prove each and every element of all offenses against him, beyond a reasonable doubt, particularly this offense.

THE COURT:     Very well. Factual base is established. Do you still wish to plead guilty?

[PETITIONER]:     Yes, Your Honor.

(*Id.* at 8:23–9:21.)

Despite presenting vague allegations about a learning disability and his innocence, Petitioner does not now claim that he misunderstood the Court's questions during the plea hearing or the ramifications of his answers, but oddly suggests that his attorney should have objected to his own answers to the Court's questions. (*See* Petition ¶ 12, Ground 3 (contending that counsel failed to object to unspecified Rule 11 violations).) Petitioner does not allege, and

the Court has no reason to conclude, that defense counsel knew Petitioner's answers during the plea colloquy, made under oath, were untruthful. Petitioner now contends that his attorney coerced him to plead guilty, but during the plea colloquy, Petitioner repeatedly denied that anyone had influenced his plea decision, expressly agreeing that he was pleading guilty "because [he is], in fact, guilty and for no other reason and no one has any threats or promises to cause [him] to plead guilty." (Plea Tr. at 5:2–6.) Furthermore, Petitioner affirmed that his counsel had advised him of the rights incident to his right to a speedy trial, and that he was satisfied with the legal advice rendered by his counsel. (*Id.* at 3–4.)

To the extent that Petitioner claims his counsel "failed to properly investigate the law" and advised him to accept the plea agreement "without first investigating the circumstances of the offense" (*see* Petition ¶ 12, Ground 1), Petitioner does not identify any rule of law that would have precluded his conviction. Furthermore, as noted above, Petitioner's sworn statements at his plea hearing contradict this position. (Plea Tr. at 3:18–4:2.)

With regard to Petitioner's complaints regarding his attorney's legal advice regarding possible sentences, the Court notes that Petitioner concedes that the plea agreement advised him of the maximum sentence. (Petition ¶ 12, Ground 2.) Further, Petitioner's plea agreement and his sworn statements during the plea hearing confirmed that he understood the maximum sentence for the offense, that the guidelines were advisory, and that the Court retained ultimate sentencing discretion. (*See* Plea Tr. at 4–5; Plea Agreement at 2.) Moreover, Petitioner acknowledged during the plea colloquy that the plea agreement called for an offense level of 24 under the sentencing guidelines. (Plea Tr. at 8.) Consequently, any error defense counsel made in forecasting Petitioner's possible sentence was cured by the notice given in the plea agreement

and during the plea hearing, and did not prejudice Petitioner.[2]  *See, e.g.*, *Shedrick*, 493 F.3d at

299 ("[D]efense counsel's conjectures to his client about sentencing are irrelevant where the

written plea agreement and in-court guilty plea colloquy clearly establish the defendant's

maximum potential exposure and the sentencing court's discretion.").

Because the allegations presented in the first three grounds of the Petition are flatly

contradicted by the plea agreement and Petitioner's sworn statements during the plea hearing,

because the Court is satisfied that Petitioner knowingly and voluntarily entered into the plea

agreement, and because the Court is satisfied that enforcement of the appellate waiver against

these claims will not result in a miscarriage of justice, the Court will deny these portions of

Petitioner's § 2255 motion.

C.      Ineffective Assistance: Counsel's Failure to Appeal Petitioner's Sentence

Despite the waiver of appeal and collateral attack, the Court cannot dispose of the fourth

ground of the Petition at this time.  With this ground, Petitioner claims that his counsel

"improperly informed [him] that [he] could not appeal [the] sentence," and that counsel did not

appeal his sentence.  (Petition ¶ 12, Ground 4.)  The Third Circuit in *United States v. Shedrick*

held that deficient assistance of counsel that prevents a defendant from filing an appeal

constitutes a miscarriage of justice that precludes enforcement of a collateral attack waiver.  493

F.3d at 298; *see also United States v. Poindexter*, 492 F.3d 263, 272 (4th Cir. 2007) ("[A]n

attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's

unequivocal instruction to file a notice of appeal even though the defendant may have waived his

---

[2]The Court notes that a portion of the fourth ground of the Petition also claims ineffective assistance of counsel on the basis of Mr. Borden's legal advice regarding possible sentences. The Court will deny this portion of the fourth ground of the Petition as well, for the reasons stated above.

right to appeal."); *Campusano v. United States*, 442 F.3d 770, 772–77 (2d Cir. 2006) (same);

*Gomez-Diaz v. United States*, 433 F.3d 788, 791–94 (11th Cir. 2005) (same); *United States v.*

*Sandoval-Lopez*, 409 F.3d 1193, 1195–99 (9th Cir. 2005) (same); *United States v. Garrett*, 402

F.3d 1262, 1265–67 (10th Cir. 2005) (same).  Accordingly, the Court must consider the merits of

this claim.[3]

The Supreme Court in *Roe v. Flores-Ortega* recognized that the Sixth Amendment

standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668

(1984), applies to a claim based on counsel's failure to file an appeal.  *Flores-Ortega*, 528 U.S.

470, 477 (2000).  Under the traditional *Strickland* test, Petitioner must show both (1)

constitutionally deficient performance (i.e., falling below an objective standard of

reasonableness) by counsel and (2) prejudice.  *See Strickland*, 466 U.S. at 688, 694.  Under the

first prong of the *Strickland* test, the *Flores-Ortega* Court acknowledged that the decision

regarding whether or not to file an appeal rests with the criminal defendant, and observed that "a

---

[3]The Court of Appeals in *Shedrick* also considered the merits of, and therefore did not deem waived, the petitioner's other ineffective assistance of counsel claim premised on counsel's alleged failure to advise the petitioner of a potential sentencing enhancement (upward departure) prior to the plea.  *See* 493 F.3d at 298–300.  At first blush, this example would appear to suggest that the Court should conduct a merits inquiry of the first three grounds of the Petition.  Yet, the appellate/collateral attack waiver in *Shedrick* expressly permitted the petitioner to appeal "an erroneous upward departure from the otherwise applicable Sentencing Guidelines range," and the petitioner's claim related to counsel's assistance in understanding the effect of upward departures.  *Id.* at 298.  Unlike the claim in *Shedrick*, Petitioner's vague claims of ineffective assistance of counsel in this case do not relate to a reserved right of appeal under his plea agreement, and in any event, Petitioner's sworn statements at the plea hearing flatly contradict these claims.  Thus, this Court is persuaded that enforcement of the collateral attack waiver against these claims would not result in a miscarriage of justice.  Nevertheless, while the Court enforces the collateral attack waiver and does not conduct a full merits inquiry of these claims, the Court's review of the record—specifically, Petitioner's sworn statements during the plea hearing—convinces the Court that Petitioner could not prevail on the merits of these claims under *Strickland*.

lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477, 479; *see also United States v. Poindexter*, 492 F.3d 263, 268 (4th Cir. 2007). However, if the defendant did not specifically instruct his attorney to file an appeal, an attorney may still have a constitutional duty "to 'consult' with the defendant concerning the advantages and disadvantages of taking an appeal and to discover the defendant's appellate wishes." *Poindexter*, 492 F.3d at 268 (citing *Flores-Ortega*, 528 U.S. at 478). *Flores-Ortega* held that, under *Strickland*, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 478.

Turning to *Strickland*'s prejudice inquiry, the *Flores-Ortega* Court held that a presumption of prejudice arises when counsel's deficient performance denies a defendant the opportunity to appeal. *Flores-Ortega*, 528 U.S. at 483; *see also Poindexter*, 492 F.3d at 268; *Sandoval-Lopez*, 409 F.3d at 1195–99 (9th Cir.2005) (explaining that the "prejudice in failure to file a notice of appeal cases is that the defendant lost his chance to file the appeal, not that he lost a favorable result that he would have obtained by appeal"). Prejudice is presumed where counsel disregards a defendant's specific request to file an appeal, but where the record demonstrates that the defendant did not specifically request an appeal and his attorney did not fulfill his constitutional duty of consultation, prejudice will only be presumed where "a defendant . . . demonstrate[s] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at

14

484; *see also Shedrick*, 493 F.3d at 301; *Poindexter*, 492 F.3d at 268–69.  In evaluating such a claim of prejudice, "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant," but "a defendant's inability to 'specify the points he would raise were his right to appeal reinstated,' will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed." *Flores-Ortega*, 528 U.S. at 486 (citation omitted).

At this point, the Court cannot determine from the record whether Petitioner expressly requested that Mr. Borden file an appeal, or the circumstances of any consultation Mr. Borden had with Petitioner regarding his rights of appeal.  In order to determine whether an evidentiary hearing is necessary to resolve this claim, the Court will give Petitioner and the Government 30 days to file supplemental proofs and argument, not to exceed 10 pages, regarding Mr. Borden's post-sentencing consultation with Petitioner under the standard set forth in *Flores-Ortega*. Naturally, an affidavit from the attorney and the client would be appropriate.  The Court notes, however, that this particular claim does not in and of itself attack the substance of the Court's sentence.  If Petitioner prevails on this claim, his sole relief would be recourse to an appeal. *Cf. Shedrick*, 493 F.3d at 303 (vacating and remanding with instructions to the district court to re-enter the sentence so that the petitioner could file an appeal).  For present purposes, the Court will defer judgment on the fourth ground of the Petition.

### *Conclusion*

For the foregoing reasons, Quadir Snell's petition (Doc. No. 1) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied in part, and the Court will defer

judgment in part, pending supplemental submissions regarding whether counsel satisfied his obligation under *Flores-Ortega* to consult with Petitioner regarding his rights of appeal.  An appropriate form of order accompanies this Memorandum Opinion.


Dated: January 14, 2011

    S/Garrett E. Brown, Jr.
Garrett E. Brown, Jr., Chief Judge
United States District Court

16